UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUAUHTEMOC MENESES, | No. C-11-03615 DMR |
| Plaintiff, | **ORDER ON JURISDICTION AND STANDING** |
| v. | |
| U-HAUL INTERNATIONAL, INC. and U-HAUL CO. OF CALIFORNIA, | |
| Defendants. | |

On November 18, 2010, Plaintiff Cuauhtemoc Meneses ("Meneses") brought a class action lawsuit against Defendants U-Haul International, Inc. and U-Haul Company of California (collectively "U-Haul") in the Central District of California. The lawsuit alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh Act"). [Docket No. 1.] Upon the parties' stipulation, the court ordered that the case be transferred to the Northern District of California to be resolved in accordance with a settlement agreement (Defs.' Req. for Judicial Notice in Supp. of Their Opp'n Br. Regarding Standing ("RJN"), Ex. 4, at 5-21 ("*Settlement Agreement*")) resulting from a prior class action against U-Haul entitled *Richard v. Bayshore Moving Center*, No. C 96-3881 CW (N.D. Cal.). [*See* Docket No. 13.]

While it is not entirely clear from the stipulation itself, the parties' subsequent submissions indicate that they intended that Plaintiff pursue only his individual claim and drop the class action allegations as part of the stipulated transfer to this district. [*See, e.g.*, Docket No. 66 (Parties' Joint Letter on How *Richard* Settlement Applies to This Action), at 1 ("[T]he parties to the Meneses Central District action stipulated to transfer Plaintiff's *individual* ADA claim to the Northern

District of California and to have *his* ADA claim decided pursuant to the Richard Settlement.") (emphasis added).]

Once in this District, Meneses sought leave to amend his complaint to conform to what he believed he had accomplished through the stipulated transfer by "1) withdraw[ing] the class action allegations, 2) omit[ting] the . . . state law claims, [and] 3) enforc[ing] the Richards [sic] class settlement at Defendants [sic] 20 identified locations." In addition, Meneses sought to "add an additional 30 locations for which Plaintiff seeks to enforce under the Richards [sic] class action settlement." [Docket No. 37.] Meneses took the position that the parties' stipulation vested him with the ability to bring an action to challenge ADA violations at 20 locations, and potentially 30 more, all through an individual action to enforce the *Richard* settlement agreement. (*See generally* Pl.'s Mem. in Supp. of Mot. for Leave to File Am. Compl.) U-Haul disagreed. (*See generally* Defs.' Opp'n to Pl.'s Mot. for Leave to File Am. Compl.)[1]

This court denied Plaintiff's motion without prejudice and ordered briefing from both parties to address the fundamental questions regarding Plaintiff's basis for standing and the Court's jurisdiction over this action. [Docket No. 62.] Having considered both parties' arguments and submissions, the court hereby finds that the Court has subject matter jurisdiction over this action and that as an individual plaintiff, Meneses has standing to enforce the *Richard* settlement agreement only as to the one U-Haul location for which he has adequately alleged injury-in-fact. As a result, the allegations in Plaintiff's complaint as to any other U-Haul locations are dismissed with leave to amend.

---

[1] In this way, the parties' maneuvering led to an unusual procedural posture. Meneses has taken the position that he has standing *as an individual plaintiff* to challenge alleged ADA violations at all fifty identified U-Haul locations by bringing an action to enforce the *Richard* settlement agreement. For this reason, although the operative complaint currently contains class allegations [Docket No. 1], the complaint shall be deemed to *not* be styled as a class action, since Meneses has argued that he possesses adequate standing to pursue all claims as an individual plaintiff. The court will analyze the complaint as if it does not contain class allegations.

2

# I. Background & Procedural History

## A. The Underlying *Richard* Class Action

In 1996, Lance P. Richard, on behalf of himself and others similarly situated, filed a class action lawsuit against Defendants and others alleging that he and other persons with disabilities were denied equal access to and enjoyment of Defendants' commercial facilities. (*See* RJN, Ex. 1.) The First Amended Complaint ("FAC") in *Richard* contained allegations against Defendants' facilities throughout the United States, as well as against the Bayshore Moving Center, a facility owned and operated by Defendants in San Francisco, California. (*See* RJN, Ex. 1.) Specifically, the FAC alleged that Defendants "engaged in a practice and policy of owning, operating and maintaining U-Haul facilities throughout the United States which are in violation of the ADA requirements concerning removal of barriers and provision of equal access for patrons with physical disabilities." (*See* RJN, Ex. 1, at ¶ 31.) The FAC also alleged that Defendants violated California's Unruh Act by denying equal access to and use of the Bayshore Moving Center facility to persons with physical disabilities. (*See* RJN, Ex. 1, at ¶ 39.)

The court certified a Plaintiff class in the *Richard* action composed of

> [a]ll persons with physical disabilities throughout the United States who under Title III of the [ADA], have been denied the right to full and equal access to, and use and enjoyment of Defendants' goods and services at any and all U-Haul facilities throughout the United States which are owned, maintained and/or controlled by [D]efendants; and
> [a]ll persons with physical disabilities who, under California law, have been denied the right to full and equal access to, and use and enjoyment of [D]efendants' goods and services at the U-Haul facility in the City and County of San Francisco known as the Bayshore Moving Center.

(RJN, Ex. 2.) The parties to the current action all agree that Meneses was a member of the *Richard* class. [*See* Docket No. 38, at 68; Docket No. 53, at 4; Docket No. 66, at 2.] On September 21, 1998, the *Richard* court entered an order granting final approval to the parties' settlement agreement and dismissing the action with prejudice. (*See* RJN, Ex. 4, at 3.) However, the court expressly retained jurisdiction to enforce the terms of the settlement agreement. (*See* RJN, Ex. 4, at 3.)

The *Richard* settlement agreement requires Defendants to make "best efforts" to bring all of their facilities in the United States into compliance with the ADA Access Guidelines ("ADAAG")

3

"as soon as practicable, but no later than 6 years after Final Approval" of the agreement. *Settlement Agreement* at 7. In exchange, the class members agreed to release Defendants as follows:

> any and all past and/or present claim, right, demand, charge, complaint, action, cause of action, obligation or liability of any and every kind, known or unknown, for individual and/or class injunctive relief, declaratory relief, or attorneys' fees based upon any and all claims under Title III of the [ADA] relating to access for persons with Mobility Disabilities at the Subject Facilities.

*Id.* at 14. The release "does not apply to any claims that may exist under State laws, except as set forth . . . regarding the Bayshore Moving Center." *Id.* The agreement contains a further statement regarding "future claims":

> The releases in the settlement agreement do not extend to any future claims (i.e., claims arising from incidents and/or conduct after the date of Final Approval) that may arise against any person or persons concerning any alleged failure at the Subject Facilities . . . to keep paths of travel clear for access as may be required under Title III of the ADA.

*Id.* The settlement agreement also includes a two-step dispute resolution procedure whereby the parties are required to first meet and confer regarding obligations under the settlement agreement and, if no resolution is achieved, to submit the matter for formal resolution to the Magistrate Judge assigned to the case. *Id.* at 11.

### B. Plaintiff Meneses' Current Action

After encountering barriers to equal access in August 2010 in at least one of Defendants' locations,[2] Plaintiff filed a proposed class action complaint against Defendants on November 18, 2010 in the Central District of California. (*See* Compl. ¶ 31.) He alleged that Defendants denied him and other mobility-impaired persons equal access to and enjoyment of their commercial facilities in violation of the ADA and the Unruh Act. (*See generally* Compl.) Plaintiff sought to certify a class consisting of "all mobility impaired/wheelchair-bound persons located in California who have patronized or would like to patronize U-[H]aul locations identified [in the Complaint]," including such persons "who have been, who were, or have actual knowledge and are being deterred, [or who] would have been . . . denied the full and equal enjoyment of the goods, services,

---

[2] Plaintiff may have encountered, or been deterred by, barriers to equal access at three other locations. In his Complaint, he alleges that "three of [Defendants'] other locations were also not accessible to him," but does not elaborate. (Compl. ¶ 32.)

programs, facilities, privileges, advantages, or accommodations" of the named U-Haul locations. (Compl. ¶ 23.) Plaintiff identified twenty U-Haul facilities that violated the ADA and the Unruh Act. (*See* Compl. ¶ 34.)

The parties stipulated to transfer the case to this Court and to submit Plaintiff's ADA claim to the dispute resolution procedure set out in the *Richard* settlement agreement. [*See* Docket Nos. 31-32.] The parties also stipulated to drop Plaintiff's state-related Unruh Act claim. [*See* Docket Nos. 31-32.] On October 14, 2011, Plaintiff filed a motion for Leave to File an Amended Complaint. [Docket Nos. 36-37.] Among other things, Plaintiff sought to "withdraw the class action allegations . . . [and] add an additional 30 [U-Haul] locations for which Plaintiff seeks . . . enforce[ment of] the Richards [sic] class action settlement." [*See* Docket No. 37.] Because Defendants contended Plaintiff was asserting his own individual claim and not a class action lawsuit, they argued he lacked standing to add the additional 30 U-Haul locations. [*See* Docket No. 47, at 11.] In addition, Defendants urged "this Court [to] revisit Plaintiff's standing to assert his ADA claim against 19 of the 20 U-Haul facilities named in his original Complaint." [Docket No. 47, at 4.] On December 22, 2011, the court denied Plaintiff's Motion for Leave to Amend without prejudice and ordered briefing from the parties explaining Plaintiff's basis for subject matter jurisdiction and standing. [*See* Docket No. 62.] As part of its order, the court specifically instructed the parties to address whether Meneses has standing as an individual plaintiff to pursue claims regarding U-Haul facilities that he has not personally visited. [*See* Docket No. 62.]

## II. Subject Matter Jurisdiction

### A. Legal Standard

Federal courts are courts of limited jurisdiction, and the presumption is that they are without jurisdiction unless the contrary affirmatively appears. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) (citation and quotation marks omitted). Parties may not waive subject matter jurisdiction, and the court retains a duty to assess whether it has jurisdiction throughout the duration of a case. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

District courts do not have inherent "subject matter jurisdiction to enforce a settlement simply because the dismissal of a federal action served as part of the consideration for the settlement

agreement." *Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1995) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994)). However, if the district court explicitly retains jurisdiction over the settlement agreement or incorporates the terms of the agreement into its dismissal order, then "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen*, 511 U.S. at 381; *Hagestad*, 49 F.3d at 1433; *Williams v. Sugar Hill Music Publ'g, Ltd.*, No. C 05-03155 CRB (MEJ), 2006 WL 1883350, at *3 (N.D. Cal. July 7, 2006).

### B. Analysis

The court finds that it has subject matter jurisdiction over this case because the *Richard* court retained jurisdiction over the settlement agreement in its dismissal order. The order granting final approval of the *Richard* settlement specifically states that "this Court shall assign this case to a Magistrate Judge who will retain jurisdiction to enforce the terms of the settlement." (RJN, Ex. 4, at 2-3.) The settlement agreement also included a provision whereby "the Court shall dismiss [the *Richard*] action with prejudice subject to the assignment of a Magistrate Judge who will maintain jurisdiction to enforce the terms of this Settlement Agreement." *Settlement Agreement* at 4. Because the court incorporated the terms of the settlement agreement into its dismissal order and because the dismissal order explicitly retained jurisdiction to enforce the settlement, this Court has ancillary jurisdiction to enforce the *Richard* agreement in the current action.

### III. Standing

### A. Legal Standard

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing is an essential part of the case-or-controversy requirement of Article III. *Id.* at 560 (citation omitted). Before a federal court can consider the merits of a legal claim, the party seeking to invoke the jurisdiction of the court must establish the requisite standing to sue. *Whitmore v. Ark.*, 495 U.S. 149, 154 (1990). The constitutional requirements for standing are:

> First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between

> the injury and the conduct complained of–the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations and quotations omitted).

### B. Analysis

#### 1. Standing under Settlement Agreements

The parties stipulated to and the Central District ordered that Plaintiff's ADA claim be resolved in accordance with the terms of the *Richard* settlement. [Docket Nos. 31-32]. Additionally, in recent briefing the parties agreed "that the Richard Settlement Agreement applies to Plaintiff's claims." [Docket No. 66, at 1.] Thus, Plaintiff's claim involves the enforcement of a settlement agreement. Enforcement of a settlement agreement is governed by principles of contract law. *Hook v. Arizona*, 972 F.2d 1012, 1015 (9th Cir. 1992); *Cooper v. California*, No. C 02-03712 JSW, 2007 WL 1703829, at *2 (N.D. Cal. June 12, 2007); *see also Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) ("The interpretation of a settlement agreement is governed by principles of state contract law, . . . even where a federal cause of action is settled or released.") (citation and quotation marks omitted); *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (applying state law to determine the enforceability of settlement agreement under ADA). Under those principles, an individual who is a party to a settlement agreement has standing to bring a motion to enforce the agreement. *Cf. Kokkonen*, 511 U.S. at 381; *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002); *Hook*, 972 F.2d at 1015. The *Richard* settlement agreement defines "parties" to the agreement as "U-Haul Company of California, U-Haul International, Inc., . . . Lance Richard, and all Class Members." *Settlement Agreement* at 7. Since Plaintiff was a *Richard* class member, he was a party to the *Richard* settlement agreement, by its own terms.[3] Thus, Plaintiff has standing to enforce the *Richard* settlement.

---

[3] Although the parties address Plaintiff as a third party beneficiary of the *Richard* settlement agreement, this is incorrect. The agreement explicitly defines the parties to the action and includes all class members in that definition. As a class member to the *Richard* action, Plaintiff was a party to the settlement and not a third party beneficiary.

However, the court also must determine to what extent Meneses may enforce the agreement -- that is, whether he has standing as an individual plaintiff to enforce it as to all of Defendants' locations or only as to those locations for which he can establish that he personally sustained an injury. The court thus turns to the *Lujan* factors to assess whether Plaintiff has standing to enforce the settlement at all of Defendants' facilities.

### a. Injury-in-Fact

To satisfy standing requirements, a plaintiff must show his injury is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. He must show more than "injury to a cognizable interest." *Id.* at 563. Rather, he must establish that he has personally been injured. *Id.*

A breach of contract claim under California law has four elements: "the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965). With respect to injury, the plaintiff must show "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (finding "fear of future layoff" not actionable injury); *see also Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable."). Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury. *Aguilera*, 223 F.3d at 1015; *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

Plaintiff alleges in his proposed First Amended Complaint ("proposed FAC") that he "suffered discrimination as a result of being denied full and equal access" to Defendants' Long Beach, California facility because Defendants "did not have accessible parking or a fully accessible restroom." [Docket No. 38, Ex. A, at 11.] He sent Defendants a letter and advised them of these alleged violations, in addition to advising them "that three of their other locations were also not accessible to him." [Docket No. 38, Ex. A, at 11.] As a result of his experiences at Defendants' facility, Plaintiff was allegedly "injured by the discrimination encountered [there] and/or continues to be injured by the inability to patronize Defendant's [sic] facilities, [and has] also been injured by the stigma of Defendant's [sic] discrimination." [Docket No. 38, Ex. A, at 65.] Plaintiff also

8

retained "professional building experts to investigate, identify, and document Defendant's [sic] discriminatory barriers." [Docket No. 38, Ex. A, at 12.] Pursuant to those investigations, he listed fifty of Defendants' facilities that allegedly violate the ADA. [Docket No. 38, Ex. A, at 12-14.] He contends that these facilities violate the *Richard* settlement agreement and that as a class member to that action, he can enforce the agreement and "requir[e] the Defendant[s] to remove the violations" at the fifty identified locations. [*See* Docket No. 38, Ex. A, at 68.]

While Plaintiff claims he suffered personal injury from his encounters at one of Defendants' locations, he has not alleged or shown any "concrete and particularized" harm from any of Defendants' remaining forty-nine locations. There is no indication that Plaintiff has patronized, or even intended to patronize any of those locations or that their alleged barriers have harmed him. Although the proposed FAC alleges that Plaintiff "may" use Defendants' facilities in the future, this allegation does not constitute "appreciable or actual damage." [*See* Docket No. 38, Ex. A, at 65.] His injuries stemming from those locations are at best speculative or nominal. Because Plaintiff has failed to show he has suffered injury-in-fact at forty-nine of Defendants' facilities, he lacks standing to force Defendants to comply with the *Richard* settlement as to those locations.

**b. Causation and Redressability**

In addition to showing injury-in-fact, a plaintiff must show that the injury complained of is "fairly . . . trace[able] to the challenged action of the defendant" and that it is likely "that the injury will be redressed" by the court. *Lujan*, 504 U.S. at 560-61.

Plaintiff has established injury-in-fact as to the one location where he personally encountered barriers of equal access, and the court also finds he has met the two remaining requirements of Article III standing. Plaintiff's allegation of being "injured by the discrimination encountered" at Defendants' facility is clearly traceable to Defendants' actions. [Docket No. 38, Ex. A, at 65.] Plaintiff alleges that Defendants injured him because they failed to make their "best efforts" to bring all of their facilities into compliance with the ADAAG by 2007, in accordance with the agreement. [*See* Docket No. 38, Ex. A, at 63-65.] As a result of Defendants' alleged breach, Plaintiff was denied "reasonable access" to one of their facilities. [*See* Docket No. 38, Ex. A, at 67.] Further, it is likely that the court can redress Plaintiff's injury because under the dispute resolution terms of the

1  settlement agreement, "[d]ecisions by the Magistrate Judge [assigned to the case] shall be binding on
2  the parties." *Settlement Agreement* at 11. Because this court has jurisdiction to order enforcement
3  of and compliance with the settlement agreement and because that order is binding on Defendants,
4  the court can likely redress Plaintiff's injury.

### 2. Standing Under the ADA

The parties jointly state that this case should be resolved pursuant to the *Richard* settlement agreement and that the terms of that agreement bar Plaintiff from asserting an independent ADA claim. [*See* Docket Nos. 31 and 66.] Notwithstanding the parties' joint statement, and because the court finds it unclear whether the *Richard* settlement in fact bars Plaintiff's original ADA claim,[4] the court will also address Meneses' standing under the ADA. In this analysis, the court finds that even if Plaintiff were bringing an ADA claim, rather than a claim for enforcement of a settlement agreement, he nonetheless would lack standing to force Defendants to comply with the ADA at those locations he has not personally visited, or at least expressed a genuine intent to visit but was deterred from doing so.

In addition to the Article III requirements, a private plaintiff seeking injunctive relief under the ADA must demonstrate a "real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation marks omitted). In other words, a plaintiff must demonstrate "'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Article III requires this showing to "ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties." *Id.* at 949. A plaintiff can meet this burden by showing he "intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Id.* at 948. A plaintiff may also establish cognizable injury "if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability

---

[4] The settlement agreement released Defendants from "any and all past and/or present claim . . . based upon any and all claims under Title III of the [ADA] relating to access." *Settlement Agreement* at 13-14. The "future claims" provision of the settlement agreement explains that the agreement does not release future claims about customer service or paths of travel. *See Settlement Agreement* at 14. But nothing in the agreement addresses whether the release provisions apply to future claims for barriers to access, such as those Plaintiff alleges in his original complaint.

there." *Id.* at 949; *see also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) ("[W]hen a Plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury.") However, "[h]e lacks standing if he is indifferent to returning to the [place of public accommodation] or if his alleged intent to return is not genuine." *Chapman*, 631 F.3d at 953.

Plaintiff fails to demonstrate a "real and immediate threat of repeated injury in the future" and thus, would not have standing under the ADA. Plaintiff has personally encountered barriers to equal access at Defendants' Long Beach location and has stated he intends to return to U-Haul in the future "for the dual purpose of patronizing and ensuring U-[H]aul's compliance [with] accessibility laws. [*See* Docket No. 38, Ex. A, at 11.] Thus, Plaintiff would meet the standing requirements under the ADA as to this specific location. However, he could not establish cognizable injury as to the remaining forty-nine locations because he has not alleged that he has personally encountered barriers related to his disability at these locations, or that he genuinely intended to patronize these locations but was deterred from doing so by his knowledge that they are not ADA-compliant. Thus, while Plaintiff has standing under the ADA to pursue an individual claim against Defendants as to the one location he personally visited, he does not have standing as to the remaining forty-nine locations.

### IV. Conclusion

For the foregoing reasons, the court finds that it has subject matter jurisdiction over this action and that Plaintiff has individual standing to enforce the *Richard* settlement only as to the one U-Haul location for which he has adequately alleged injury-in-fact. The allegations in Plaintiff's complaint as to any other U-Haul location are dismissed with leave to amend. Plaintiff shall file any such motion or stipulation no later than March 22, 2012.

IT IS SO ORDERED.

Dated: February 29, 2012

DONNA M. RYU
United States Magistrate Judge

11